# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

----------------------------------------------------------

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| FOAMIX PHARMACEUTICALS LTD., | : **SECTIONS 14(a) AND 20(a) OF THE** |
| DR. STANLEY HIRSCH, STANLEY STERN, | : **SECURITIES EXCHANGE ACT OF** |
| REX BRIGHT, DR. ANNA KAZANCHYAN, | : **1934** |
| TONY BRUNO, DAVID DOMZALSKI, | : |
| DR. AARON SCHWARTZ, and SHARON | : **JURY TRIAL DEMANDED** |
| BARBARI, | : |
| | : |
| Defendants. | : |

----------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Foamix Pharmaceuticals Ltd. ("Foamix or the "Company"), and the members Foamix's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Foamix and affiliates of Menlo Therapeutics Inc. ("Menlo").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on December 4, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Giant Merger Subsidiary Ltd. ("Merger Sub"), a wholly owned subsidiary of Menlo, with Merger Sub merging with and into Foamix, with Foamix continuing as the surviving corporation and an indirect wholly owned subsidiary of Menlo (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Foamix common share issued and outstanding will be converted into (1) 0.5924 of a fully paid share of common stock, par value $0.01 per share, of Menlo; and (2) and one contingent stock right ("CSR") for each share of Foamix owned (the "Merger Consideration"). After the closing of the Proposed Transaction, Foamix shareholders will own approximately 59% and Menlo shareholders will own approximately 41% of the post-close company's shares.

3.  As discussed below, Defendants have asked Foamix's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction. The financial projections were also utilized by the financial advisor of the Company, Barclays Bank PLC ("Barclays") in conducting the valuation analyses in support of the fairness opinion. The Registration Statement also omitted material information with respect with its analyses performed to reach the fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Foamix's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Foamix is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Foamix common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Dr. Stanley Hirsch has served as a member of the Board since 2005 and is the Chairman of the Board.

11. Individual Defendant Stanley Stern has served as a member of the Board since 2014.

12. Individual Defendant Rex Bright has served as a member of the Board since June 2014.

13. Individual Defendant Dr. Anna Kazanchyan has served as a member of the Board since 2014.

14. Individual Defendant Tony Bruno has served as a member of the Board since 2018.

15. Individual Defendant David Domzalski has served as a member of the Board since 2018 and is the Company's Chief Executive Officer.

16. Individual Defendant Dr. Aaron Schwartz has served as a member of the Board since 2014.

17. Individual Defendant Sharon Barbari has served as a member of the Board since 2019.

18. Defendant Foamix is incorporated in Israel and maintains its principal offices at 520 U.S. Highway 22, Suite 204, Bridgewater, New Jersey 08807.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "FOMX."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

21.     Foamix, a late clinical-stage specialty pharmaceutical company, develops and commercializes foam-based formulations for dermatological therapy in the United States, France, Denmark, and Germany. Its lead product candidates include FMX101, a novel topical foam formulation of the antibiotic minocycline that has completed third pivotal Phase III clinical trial for the treatment of moderate-to-severe acne; and FMX103, which is in Phase III clinical trial for the treatment of moderate-to-severe papulopustular rosacea. The company's product pipeline includes FCD105 and FMX109 for the treatment of moderate-to-severe acne vulgaris; and FMX110 for the treatment of papulopustular rosacea. Foamix Pharmaceuticals Ltd. has development and license agreements with Bayer HealthCare AG; LEO Pharma A/S; Mylan N.V.; and Actavis plc.

22.     On November 11, 2019, the Company and Menlo jointly announced the Proposed Transaction:

> REHOVOT, Israel and BRIDGEWATER, N.J. and REDWOOD CITY, Calif., Nov. 11, 2019 (GLOBE NEWSWIRE) -- Foamix Pharmaceuticals Ltd. (Nasdaq: FOMX ) ("Foamix") and Menlo Therapeutics Inc. (Nasdaq: MNLO) ("Menlo") today announced that they have signed a definitive merger agreement to create a combined biopharmaceutical company focused on the commercialization and development of therapeutics to serve patients in the dermatology space. The Boards of Directors of both Foamix and Menlo have unanimously approved the transaction.
> The combined company will have a diversified portfolio including an approved product and three late-stage product candidates focused on dermatologic indications.
>
> Foamix recently received FDA approval for AMZEEQ™ (minocycline) topical foam, 4%, for the treatment of inflammatory lesions of non-nodular moderate-to-severe acne vulgaris in adults and pediatric patients 9 years of age and older. AMZEEQ™ is the first topical formulation of minocycline.

Foamix is finalizing the implementation of the commercial infrastructure in preparation for a U.S. commercial launch anticipated in January 2020. Foamix recently submitted a New Drug Application to the U.S. Food and Drug Administration (FDA) for FMX103 (minocycline) topical foam, for the treatment of moderate-to-severe papulopustular rosacea. The FDA set a Prescription Drug User Fee Act action date of June 2nd, 2020. If approved, FMX103 would be the first minocycline product available for rosacea patients. Foamix is also conducting a Phase II trial for FCD105, a topical combination foam of minocycline and adapalene, currently being evaluated for the treatment of moderatate-to-severe acne vulgaris.

Menlo's lead late stage product candidate, serlopitant, is being developed as a novel treatment for pruritus (itch). Two Phase III clinical trials of serlopitant for the treatment of pruritus associated with prurigo nodularis ("PN") are fully enrolled, with results expected in March or April 2020. Serlopitant has received Breakthrough Therapy Designation by the FDA for the treatment of pruritus associated with PN and has the potential to be the first approved therapy for this indication. Serlopitant is also being evaluated for chronic pruritus of unknown origin ("CPUO"), currently in Phase II clinical trials, and for pruritus associated with psoriasis, which had positive Phase II data.

The combined company has a compelling product portfolio and late-stage pipeline. There are multiple near-term milestones:
- Commercial launch of AMZEEQTM anticipated in January 2020
- Phase II clinical trial results for serlopitant for the treatment of CPUO in January or February 2020
- Phase III clinical trial results in the U.S. and Europe for serlopitant for the treatment of pruritus in PN in March or April 2020
- FMX103 PDUFA action date of June 2, 2020
- Phase II clinical trial results for FCD105 for treatment of moderate to severe acne with top-line data expected in mid-2020
- NDA submission, assuming Phase III success for serlopitant for the treatment of pruritus in PN, in H2 2020

**Transaction Details**

The transaction is structured as a stock-for-stock exchange, enabling the Foamix and Menlo shareholders to share in the upside advantages of combining the companies. Recognizing the near

6

term data coming from Menlo's Phase III trials in PN, the transaction accounts for the data outcomes by providing a premium to Menlo in the event that both trials are successful, while creating a mechanism to provide more shares to Foamix shareholders to provide downside adjustment if one or both PN trials do not hit their primary endpoint.

Under the terms of the merger agreement, each share of Foamix stock will be exchanged for 0.5924 of a share of Menlo common stock and a contingent stock right ("CSR"). The exchange ratio (prior to any adjustment through the CSR) implies a 18% premium to Menlo shareholders based upon the 10-day average volume weighted trading price for each company. Foamix shareholders will own approximately 59% of the combined company and Menlo shareholders will own approximately 41% on a pro forma, fully diluted basis, giving effect to all dilutive stock options at the time of announcement, units and warrants but without taking into account any adjustment to the exchange ratio or through the CSR. The exchange ratio or CSR may result in the delivery of additional shares of Menlo common stock to Foamix shareholders dependent upon the Phase III trial results for serlopitant for the treatment of pruritus in PN. There are certain adjustments to the ownership levels for each company's shareholders as follows that result from an adjustment to the exchange ratio under the Merger Agreement prior to closing or post-closing through the issuance of CSRs to Foamix shareholders:

- If one of the Phase III PN trials fails to meet its primary endpoint at or before May 31, 2020, Foamix shareholders will receive an additional 0.6815 of a share of Menlo common stock for each Foamix share, increasing pro forma ownership of the combined company by Foamix shareholders to 76%
- If both Phase III PN trials fail to meet their primary endpoints at or before May 31, 2020, Foamix shareholders will receive 1.2082 additional Menlo shares for each Foamix share, increasing pro forma ownership of the combined company by Foamix shareholders to 82%
- If both the Phase III PN trials are successful with results announced by May 31, 2020, then no additional Menlo shares will be issued to Foamix shareholders and pro forma ownership by Foamix shareholders will remain 59%
- In the event that the results of the Phase III PN trials are received prior to closing (or if the results of neither trial has been announced by May 31, 2020 and the closing occurs

thereafter), then the exchange ratio will be amended based on the clinical trial results and no CSRs will be issued.

The adjustments to ownership levels were designed with the intent of providing protection to Foamix shareholders in the event that either of these important serlopitant clinical trials were not successful. To the extent the CSRs are issued, they will not be registered or separately tradeable, and there will be restrictions on their transfer.

The combined company will be led by David Domzalski, CEO of Foamix and headquartered in New Jersey. The board of the combined company will consist of five members designated by Foamix (including Mr. Domzalski) and two members designated by Menlo (including Steve Basta, its CEO).

The transaction is subject to approval of the merger by Foamix shareholders, approval of the share issuance to Foamix shareholders by Menlo stockholders, as well as regulatory approvals and satisfaction of other customary closing conditions. Certain significant shareholders of Foamix and Menlo, together with the CEOs of both companies, have entered into agreements, whereby they have agreed to vote the shares they hold at the time of the shareholder meeting in favor of the merger and/or share issuance (subject to limited exceptions). The transaction is expected to be completed in late Q1/early Q2 of 2020.

**Combination Creates a Differentiated Dermatology-Focused Company**

The combination of the two companies is expected to capitalize on the collective skills sets, internal expertise and combined assets to create a comprehensive and more scaled biopharmaceutical company focused on dermatology. Foamix's mission is to improve the lives of patients by developing and commercializing proprietary, innovative and differentiated drugs in dermatology, and plans to leverage its infrastructure to efficiently commercialize a portfolio of products while continuing to develop new therapies.

Foamix is currently developing the commercial infrastructure to support the upcoming U.S. commercial launch of AMZEEQTM anticipated in January 2020. The initial launch intends to focus on 6,000 high-prescribing dermatologists. The commercialization plans for FMX103 and serlopitant for pruritus associated with PN, if approved, will utilize the established sales force and commercial

8

infrastructure for AMZEEQ™ requiring minimal additional investment.

David Domzalski, Foamix Chief Executive Officer, said: "The combination of Menlo with Foamix accelerates our progression in becoming a leading dermatology-focused company with several late-stage assets that can leverage the commercialization infrastructure we are building to support the launch of AMZEEQ™. Serlopitant for pruritus associated with PN represents a breakthrough therapy for a dermatologic condition with no currently approved treatment options. Further, Foamix's drug development platform will continue to bring novel dermatology product candidates into the clinic, including FCD105, which recently began enrollment in its Phase II trial. The combined company will look to continue developing products that will leverage the existing infrastructure.  We are excited about the momentum our company has now, and want to thank our employees and partners for their hard work and deep commitment as we enter this next phase."

Steve Basta, Menlo Chief Executive Officer, said: "Our goal with this merger is to maximize value by developing and commercializing our assets in the context of a broader dermatology franchise. A combination with Foamix will help de-risk and accelerate serlopitant's commercial launch, assuming approval. The Foamix management team also brings extensive R&D and commercial expertise, having developed two novel topical therapies for acne and rosacea at Foamix, and also in leading the successful commercial launches of several dermatology products prior to Foamix.  We are excited about what these two companies can accomplish together."

The combined company is expected to have sufficient cash to support its operational plans through the first half of 2021.

Barclays acted as exclusive financial advisor to Foamix. Skadden, Arps, Slate, Meagher & Flom, LLP and Meitar, Liquornik, Geva, Leeshem and Tal acted as Foamix's legal counsel in connection with the transaction. Guggenheim Securities, LLC acted as exclusive financial advisor to Menlo. Latham & Watkins LLP and Herzog, Fox & Neeman acted as Menlo's legal counsel in connection with the transaction.

* * *

23. The Board has unanimously agreed to Proposed Transaction. It is therefore imperative that Foamix's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

24. On December 4, 2019, Foamix and Menlo jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

25. With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

26. The Registration Statement provides that three separate sets of projections were prepared – "Foamix May Forecast," "Foamix August Forecast," and "Foamix August Probability-Adjusted Forecast." Only the "Foamix August Probability-Adjusted Forecast" was provided to the shareholders.

27. For the Foamix August Probability-Adjusted Forecast, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBIT, and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used

to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 122.

28.     For *Foamix Management's Menlo Forecast – Full Success*, *Foamix Management's Menlo Forecast – Partial Success*, and *Foamix Management's Menlo Forecast – Failure*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBIT, and (2) Unlvered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 123. Information about Menlo's prospective financial information is material since Foamix stockholders will own 59% of the combined company.

29.     For *Menlo Management Menlo Projections* (both Scenarios), the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBIT, and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 138.

30.     For *Menlo Management Foamix Projections* (Standalone), the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBIT, and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP

metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 139.

31.     For Menlo's Pro Forma Analysis (both Scenarios), the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBIT, and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 140.

32.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

33.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or

other non-discretionary expenditures that are not deducted from the measure.[1]

34. Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

35. With respect to the Barclays' *Discounted Cash Flow Analysis – Foamix*, the Registration Statement fails to disclose: (i) the Foamix's projected after-tax probability adjusted unlevered free cash flows for fiscal years 2020 through 2024 and all underlying line items; (ii) the terminal values of the Company as of December 31, 2024; (iii) the individual inputs and assumptions underlying the after-tax discount rate range of 12.0% to 14.0%, and (iv) the individual inputs and assumptions underlying the range of perpetuity growth rates of 1.0% to 3.0%. Registration Statement at 116.

36. With respect to the Barclays' *Discounted Cash Flow Analysis – Menlo – Phase III PN Trials "Full Success"*, the Registration Statement fails to disclose: (i) projected after-tax probability adjusted unlevered free cash flows for years 2020 through 2035 and all underlying line items; (ii) the terminal values of Menlo; (iii) the individual inputs and assumptions underlying the discount rate range of 12.0% to 14.0%, (iv) the individual inputs and assumptions

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

underlying the range of perpetuity growth rates of -10.0% to 0.0%. Registration Statement at 117.

37. With respect to the Barclays' *Discounted Cash Flow Analysis – Menlo – Phase III PN Trials "Partial Success"*, the Registration Statement fails to disclose: (i) projected after-tax probability adjusted unlevered free cash flows for years 2020 through 2035 and all underlying line items; (ii) the terminal values of Menlo; (iii) the individual inputs and assumptions underlying the discount rate range of 12.0% to 14.0%, (iv) the individual inputs and assumptions underlying the range of perpetuity growth rates of -10.0% to 0.0%. Registration Statement at 117-18.

38. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

44. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Foamix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Foamix, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Foamix, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Foamix, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

49. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 12, 2019              **WOLF HALDENSTEIN ADLER**
                                                                      **FREEMAN & HERZ LLP**

                                                    By:  */s/ Gloria Kui Melwani*
                                                              Gloria Kui Melwani (GM5661)
                                                              270 Madison Avenue
                                                              New York, NY 10016

Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*